UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MANUEL SHOTWELL, | ) | 1:04-CV-6496 LJO JMD HC |
| | ) | |
| Petitioner, | ) | ORDER ADOPTING FINDINGS AND |
| | ) | RECOMMENDATION IN PART |
| v. | ) | |
| | ) | ORDER REFERRING CASE TO |
| | ) | MAGISTRATE JUDGE FOR EXPANSION |
| MIKE EVANS, | ) | OF THE RECORD |
| | ) | |
| Respondent. | ) | |

**Introduction**

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

The Magistrate Judge conducted an evidentiary hearing on April 27, 2009 in order to determine whether Petitioner's counsel's investigation of Petitioner's competency to stand trial and potential mental defenses was constitutionally adequate. Petitioner filed a post-evidentiary hearing brief on July 17, 2009. (Doc. 64). Respondent filed its post-evidentiary hearing brief on September 3, 2009. (Doc. 67).

After reviewing the record and the transcript of the April 27 evidentiary hearing, the Magistrate Judge issued a Findings and Recommendation ("Recommendation") recommending that the petition be denied with prejudice. (Doc. 68). Petitioner filed objections to the Recommendation on March 24, 2010. (Doc. 69).

**Discussion**

Petitioner advances two related but distinct claims concerning his counsel's investigation into Petitioner's mental health. First, Petitioner contends that his counsel's investigation into Petitioner's competency to stand trial was deficient because counsel failed to have Petitioner evaluated by a

1 mental health professional prior to trial.  Second, Petitioner contends that his counsel's investigation
2 into potential mental defenses was constitutionally inadequate.  In order to establish entitlement to
3 relief on his ineffective assistance of counsel claims, Petitioner must show that counsel's
4 representation fell below an objective standard of reasonableness, and must identify counsel's
5 alleged acts or omissions that were not the result of reasonable professional judgment considering
6 the circumstances.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Petitioner must also
7 demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the
8 result ... would have been different." *Id*. at 694.

**I.     Counsel's Investigation into Petitioner's Competency**

Due process prohibits states from trying a person who is mentally incompetent.  *E.g. Drope v. Missouri,* 420 U.S. 162, 171 (1975).  To be competent to stand trial, a defendant must demonstrate an ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him.  *Douglas v. Woodford*, 316 F.3d 1079, 1094 (9th Cir. 2003).   Defense counsel's failure to request a competency evaluation may violate the defendant's right to effective assistance of counsel provided there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency. *E.g. Taylor v. Horn*, 504 F.3d 416, 438 (3rd Cir. 2007).

The Magistrate Judge held that Petitioner's trial counsel conducted a reasonable investigation into Petitioner's competency to stand trial in light of prevailing legal norms in California during Petitioner's trial in 2002.  As the Magistrate Judge noted,

> Pursuant to prevailing legal norms in place at the time of Petitioner's trial in 2002, counsel had a duty to request a competency hearing if he harbored "substantial doubt" about Petitioner's competency to stand trial. *See People v. Farnam*, 28 Cal.4th 107, 187 (Cal. 2002) (rejecting claim that counsel was ineffective for failing to raise competency issue where "nothing in the record raised a substantial doubt as to competency"); *People v. Rodrigues*, 8 Cal.4th 1060, 1108 (Cal. 1994) ("[b]ecause the record does not demonstrate a substantial doubt as to defendant's competency, we reject defendant's related claims that his counsel was ineffective in failing to request a competency hearing" ); *see also Davis*, 384 F.3d at 646-47 (rejecting ineffective assistance claim where record did not demonstrate "substantial evidence" of incompetence).  The Ninth Circuit has explained that, "[a]lthough no particular facts signal a defendant's incompetence, suggestive evidence includes the defendant's demeanor before the trial judge, irrational behavior of the defendant, and *available* medical evaluations of the defendant's competence to stand trial." *Williams v. Woodford*, 306 F.3d 665, 702 (9th Cir. 2002) (emphasis added).

1  (Recommendation at 15).  Petitioner does not object to the legal standard expressed in the

2  Recommendation.  Instead, Petitioner contends that

> In light of Petitioner's extensive mental health background, including an evaluation from Kern Regional Center and the receipt of social security disability payments from the age of eight, hospitalization at age eight or nine for "hearing voices and seeing things," numerous calls to law enforcement by Petitioner's parents because of his uncontrollable behavior as a [sic] adolescent, a commitment to Napa State Hospital for incompetency to stand trial, and bizarre behavior–yelling and screaming at cars, shouting crazy things, acting spaced out and with a blank stare, and saying that he wanted to die–shortly before the crime, it was incumbent upon trial counsel to have a competency evaluation.

(Objections at 6).  Petitioner fails to acknowledge, however, that other facts known to Petitioner's counsel at the time of trial weighed heavily against the proposition that Petitioner was not competent to stand trial.  Petitioner's selective use of the record is unavailing, as the reasonableness of counsel's decision to forego a competency hearing must be considered in light of all the information known by counsel.

Petitioner's trial counsel, Michael Lukehart, testified at length during the April 27, 2009 evidentiary hearing regarding his procedure for assessing competency and his pre-trial impressions of Petitioner.  The Recommendation summarized Lukehart's testimony as follows:

> At the evidentiary hearing on April 27, 2009, Lukehart recounted his procedure for assessing a client's mental health.  (Ev. Hearing Trans. at 19).  Lukehart testified that the first step he took when he received a new client was to read the files available at the public defender's office, including any files for previous cases that the public defender had handled for the client.  (Id. at 19).  Lukehart would then speak with other attorneys in the public defender's office who had interacted with the client.  (Id. at 20).  Lukehart recalled that he reviewed Petitioner's file concerning an unrelated conviction for which Petitioner was being sentenced the day after the arraignment on Lukehart's case.  (Id. at 20, 22).  Lukehart remembered speaking with two attorneys in the public defender's office, Kelly Fowler and John Ulman, who had conducted preliminary interviews with Petitioner prior to Lukehart's initial meeting with Petitioner. (Id. at 27, 45).  Lukehart stated that nothing in his discussions with Ms. Folwer "raised an issue in regards to [Petitioner's] mental health."  (Id. at 28).  In fact, Ms. Folwer, the attorney initially assigned to Petitioner's case, described Petitioner as "fairly articulate and savvy on the law."  (Doc. 56 at 2).  Lukehart testified that Mr. Ulman did not raise any issues about Petitioner's mental health.  (Ev. Hearing Trans. at 28, 45).  Lukehart also spoke with two investigators, Patty Buckley and Grinnel Griffin, who interacted with Petitioner prior to trial.  (Id. at 21, 44).  Neither Ms. Buckley nor Ms. Griffin raised any concerns about Petitioner's competency. (Id. at 45).
>
> Lukehart testified that it was his practice to employ a mental status evaluation "checklist" during his initial meeting with a client.  (Id. at 20).  Lukehart's checklist included an assessment of the client's reactions to Lukehart's questioning and "whether the client seem[ed] to know what's going on."  (Id.).  Lukehart would also ask the client whether they had past mental health commitments and whether the

> client was ever placed in "special ed." (Id.). Had Lukehart harbored any "real concerns" about the Petitioner's mental health after the initial interview, he would have retained a mental health professional pursuant to his custom and practice. (Id. at 21). Lukehart met with Petitioner several times after the initial interview. During their meetings, Petitioner actively participated with counsel in preparing in his defense. Petitioner gave Lukehart the names of potential alibi witnesses and was adamant that he would testify at trial. (Id. at 33-34). At one meeting, Petitioner asked Lukehart for a copy of the transcript of Petitioner's preliminary examination. (Id. at 36).
>
> Lukehart testified that he reviewed several different sets of medical records pertaining to Petitioner's physical and mental health. Lukehart subpoenaed Petitioner's records from Kern Medical Center prior to trial; in fact, before receiving the subpoenaed records, Lukehart physically went to Kern Medical Center and reviewed records concerning a gunshot wound in Petitioner's leg in 2000 and a drug-induced psychotic episode in 1999. (Id. at 37-39). In addition to reviewing the medical documents from Kern Medical Center, Lukehart also reviewed records from Napa State Hosptial relating to Petitioner's commitment after he was found not competent to stand trial in early 1999. (Id. at 40). Lukehart recalled that the Napa State Hospital records indicated that Petitioner had become competent to stand trial after approximately five months of observation and treatment. (Id.). Lukehart testified that the records produced at the evidentiary hearing did not include all of the records he reviewed concerning Petitioner's mental health. (Id. at 39). In addition to the conclusory documents produced at the evidentiary hearing, Lukehart recalled reviewing "various and sundry examination reports...and progress reports" prepared by psychologists, psychiatrists, social workers, and other reports appended to the documents produced at the evidentiary hearing. (Id. at 40).

(Recommendation at 12-14).

There is no *per se* rule requiring an attorney to request a competency hearing in every instance where a defendant has exhibited signs of mental illness. *See Drope v. Missouri*, 420 U.S. 162, 180 (1975) ("There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated."); *see also United States v. Miller*, 531 F.3d 340, 349-50 (6th Cir. 2008) (noting that although a defendant may show signs of paranoia or other mental illness, such an illness would not necessarily render the defendant incompetent to stand trial). "Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." *United States ex rel. Foster v. De Robertis*, 741 F.2d 1007, 1012 (7th Cir. 1985) (citation ommitted). Prevailing legal norms in California in 2002 established that an attorney need not request a competency hearing unless she harbored "substantial doubt" about her client's competency to stand. *See People v. Rodrigues*, 8 Cal.4th 1060, 1112 (Cal. 1994) ("because the record does not

demonstrate a substantial doubt as to defendant's competency, we reject defendant's related claims that his counsel was ineffective in failing to request a competency hearing").

The record reveals that Lukehart conducted an investigation that was sufficient to dispel any doubts he had concerning Petitioner's competency to stand trial. Lukehart spoke with other attorneys and support staff at the public defender's office who had worked with Petitioner in the past, completed a mental health evaluation checklist during his initial meeting with Petitioner, and reviewed Petitioner's medical records, including records pertaining to Petitioner's commitment to Napa State Hospital in connection with an earlier restoration of competency for trial. The information gathered during his preliminary investigation of Petitioner's mental health did not give Lukehart reason to doubt Petitioner's competency to stand trial, and Petitioner's interaction with Lukehart before and during his trial reinforced Lukehart's assessment. Petitioner actively participated in his defense by requesting the transcript of his preliminary hearing, asserting an alibi defense, providing counsel with the names of potential witnesses, and testifying at trial. Such conduct belies the notion that Petitioner did not have "a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him." *Drope*, 420 U.S. at 171. The results of Lukehart's preliminary investigation into Petitioner's mental health and Petitioner's active participation in his own defense provided sufficient basis for Lukehart to make a reasonable professional judgement not to obtain a competency evaluation. Based on the facts known to him at the time of trial, Lukehart had sufficient indicia of Petitioner's competence to conclude that there was no "substantial doubt" as to Petitioner's ability to comprehend the proceedings and to assist in his own defense. Because Lukehart had sufficient information to make a reasonable professional judgment that no competency evaluation was needed, no further investigation of Petitioner's competency was required. *See Rodrigues*, 8 Cal.4th at 1112 (rejecting ineffective assistance claim where record did not indicate counsel should have harbored substantial doubt as to client's competency);[1] *see also Strickland*, 466 U.S. at 690-91 (decisions based on a less-than-

---

[1] Petitioner attempts to distinguish the *Rodrigues* and the other California authorities discussed in the Recommendation on the basis that, in each of the cases cited by the Magistrate Judge, the defendant received a competency evaluation by at least one mental health professional prior to trial. (Objections at 6). Although it may be true that the defendants received competency evaluations in each of the cases cited in the Recommendation, the fact remains that the cases cited by the

complete investigation are reasonable to the extent that reasonable professional judgments support the limitations counsel placed on the investigation). Accordingly, Petitioner has failed to carry his burden of rebutting the strong presumption that counsel's conduct was reasonable. *Strickland*, 466 U.S. at 689.

Petitioner's competency claim fails for an alternative reason as well: Petitioner cannot establish that he was prejudiced by Lukehart's failure to request a competency hearing.[2] The record demonstrates that there is no reasonable probability that, had Lukehart requested a competency hearing, Petitioner would have been found to be actually incompetent to stand trial. Petitioner's active role in his defense and his interactions with counsel constitute significant evidence that Petitioner was competent to stand trial. *See, e .g., Williams v. Woodford*, 384 F.3d 567, 608 (9th Cir. 2002) (fact that defendant provided witnesses in support of his alibi defense and discussed case rationally with counsel evinced competency); *Balfour v. Haws*, 892 F.2d 556, 561 (7th Cir. 1989) (defendant's request to use law library and other pretrial participation evinced competency). Petitioner's coherent testimony during trial also constitutes evidence that Petitioner was competent to stand trial. *E.g. Benson v. Terhune*, 304 F.3d 874, 885 (9th Cir. 2002) (noting that "cogent trial testimony reflects a sufficient ability to understand the proceedings and to assist in ...defense" ). Further, because Lukehart was in the best position to evaluate Petitioner's ability to understand the proceeding and assist in his own defense, the fact that Lukehart did not harbor doubt about Petitioner's competency is persuasive evidence that Petitioner was in fact competent. *E.g. Balfour*, 892 F.2d at 561; *Williams*, 384 F.3d at 606-608 ("the fact that defense counsel considered the

---

Magistrate Judge establish that whether the attorney had a basis to harbor "substantial doubt" as to her client's competency is the critical question in determining whether a decision to forego a competency evaluation was reasonable, *not* whether counsel's decision was based on a mental health evaluation .

[2] Retrospective competency determinations are disfavored, as the passage of time and difficulties inherent in evaluating a defendant's competence from a written record reduce the likelihood of an accurate retrospective determination. *Williams*, 306 F.3d at 707. Retrospective competency evaluations are only permissible when it is possible to make an accurate retrospective evaluation. *Id*. An accurate retrospective evaluation may be possible, for example, when contemporaneous medical reports exist. *Id*. Here, there are no contemporaneous mental health records for Petitioner. The closest thing to contemporaneous records concerning Petitioner's competency in 2002 are the Napa State Hospital records, which indicate that Petitioner was competent to stand trial in an unrelated matter approximately two years prior to his trial for the instant offense. (Objections at 6).

defendant competent to stand trial was significant evidence that the defendant was competent") (citation omitted); *United States v. Benton*, 434 F.3d 1104, 1113 (8th Cir. 2006) (noting that trial counsel's opinion should receive "significant weight"); *see also Watts v. Singletary*, 87 F.3d 1282, 1288 (11th Cir. 1996) ("because legal competency is primarily a function of defendant's role in assisting counsel in conducting the defense, the defendant's attorney is in the best position to determine whether the defendant's competency is suspect."). Similarly, the fact that the trial court did not invoke its duty to examine Petitioner's competence is also evidence that Petitioner was in fact competent.[3] *See Hernandez v. Ylst*, 930 F.2d 714, 718 (9th Cir. 1991) ("We deem significant the fact that the trial judge, government counsel, and [the defendant's] own attorney did not perceive a reasonable cause to believe [the defendant] was incompetent."). The current record establishes that the probability Petitioner would have been found incompetent had Lukehart requested a competency hearing is extremely minimal. Accordingly, there is no reasonable probability that but for counsel's alleged unprofessional errors, the result of Petitioner's proceeding would have been more favorable.

**II.     Counsel's Investigation into Potential Mental Defenses**

In order to provide constitutionally adequate representation to a criminal defendant who may suffer from a mental defect, counsel must conduct a reasonable investigation into potential mental defenses. *See, e.g.*, *Raley v. Ylst*, 470 F.3d 792, 800-801 (9th Cir. 2006). Counsel's investigation must be sufficient to permit informed decisions about how best to represent the client. *Sanders v. Ratelle*, 21 F.3d 1446, 1457 (9th Cir. 1994).

The Magistrate Judge assumed *arguendo* that Lukehart's investigation into potential mental defenses was deficient but held that Petitioner is not entitled to relief because he cannot establish that he was prejudiced by Lukehart's deficient investigation. (Recommendation at 19-20). As the Magistrate Judge noted, whether Petitioner was prejudiced depends on whether a mental defense could have benefitted Petitioner by negating the intent element necessary to sustain his conspiracy

---

[3] California Penal Code section 1368(a) requires trial court judges to raise any doubts about a defendant's competency *sua sponte*. CAL. PEN. CODE § 1368 (a) (Deering's 2002).

and attempted murder convictions under the theory of "diminished actuality." (Id.).[4]

Petitioner alleges that he suffered prejudice because, had counsel advanced a mental defense, Petitioner "would likely have been convicted of something less than attempted first degree murder and conspiracy to commit premeditated murder." (Objections at 14). Petitioner contends that "he may have been guilty of assault, or second-degree murder, but not first-degree murder or conspiracy with the intent to murder." (Objections at 11-12). Petitioner's contention that he could have been convicted of assault or second degree murder is based on Petitioner's speculation that "suffering from mild mental retardation and mood disturbances, [he] could have wildly and chaotically fired a weapon without having premeditated a course of action." (Objections at 13-14). As the Magistrate Judge noted, in light of the evidence presented at trial and relevant California law, it is unlikely that Petitioner can establish prejudice as a result of his counsel's performance. Nevertheless, because Petitioner has not been afforded an opportunity to present evidence regarding whether he was prejudiced by counsel's performance, this action is referred to the Magistrate Judge for the limited purpose of expanding the record pursuant to Rule 7 of the Rule Governing Section 2254 Cases. The Magistrate Judge shall receive evidence only on the narrow issue of whether Petitioner was prejudiced by his counsel's failure to assert the defense of diminished actuality.

**Order**

1) The Court ADOPTS IN PART the Findings and Recommendation denying Petitioner's claims for relief. The Court reserves judgment on Petitioner's ineffective assistance of counsel claim with respect to counsel's investigation of the diminished actuality defense pending expansion of the record; and

2) The case is HEREBY REFERRED to the Magistrate Judge for the purpose of expanding the record regarding whether Petitioner was prejudiced by counsel's performance.

IT IS SO ORDERED.

**Dated:     April 12, 2010            /s/ Lawrence J. O'Neill**

---

[4] Petitioner concedes that there is no reasonable probability that an insanity defense would have prevailed. (Objections at 9).

<u>UNITED STATES DISTRICT JUDGE</u>